IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **COUNTRYWIDE HOME LOANS, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-966-L** |
| | § | |
| **ADENIRAN ARIYO and** | § | |
| **SARAH ARIYO,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the Motion for Partial Summary Judgment of Countrywide Home Loans, Inc., filed March 5, 2007. After reviewing the motion, response, reply, record, and applicable law, the court **denies** the Motion for Partial Summary Judgment of Countrywide Home Loans, Inc.

## I. BACKGROUND

This case was brought as an action in diversity for declaratory judgment on May 31, 2006, by Plaintiff Countrywide Home Loans, Inc. ("Plaintiff" or "Countrywide") against Defendants Adeniran and Sarah Ariyo (collectively, "Defendants" or the "Ariyos"). Countrywide provided the mortgage for a home at 3502 Lindenwood Avenue in Highland Park, Texas, that the Ariyos purchased in January 2005. The home was not fully constructed at the time of closing, and $75,100 was placed into an escrow account, held by Countrywide, to pay for the estimated remaining costs of construction. A written agreement, titled "Escrow Agreement for Postponed Exterior Improvements" ("Escrow Agreement"), governed the creation and release of the escrow funds.

On February 22, 2005, before the Ariyos could move in, a fire destroyed the home. Countrywide subsequently released the escrow funds to the contractor, Edward Abraham, but the

Ariyos contend that Abraham was not entitled to the funds, as the promised construction had not been completed prior to the fire. Instead, the Ariyos contend that they were entitled to a return of the escrow funds under the Escrow Agreement.[1] In anticipation of a lawsuit by the Ariyos for breaching the Escrow Agreement, Plaintiff Countrywide brought this action seeking a declaration that its distribution of the escrow funds was correct under the Escrow Agreement. The Ariyos have filed counterclaims alleging that Countrywide breached the Escrow Agreement and breached its fiduciary duty to them, and seeking return of the escrow funds plus interest and punitive damages. Countrywide seeks summary judgment on the Ariyos' counterclaims. The court will first set forth the legal standard for summary judgment before analyzing Countrywide's arguments.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make

---

[1]Specifically, the Ariyos allege that the Escrow Agreement required a final inspection confirming that construction had been satisfactorily completed before the funds could be released, and that Countrywide breached this agreement by releasing the funds absent a final inspection. *See* Original Answer and Counter Claim at 3.

**Memorandum Opinion and Order – Page 2**

credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.  ANALYSIS

The partial summary judgment in this case does not involve any disputes over facts. Countrywide contends that the Ariyos are barred from recovering, as a matter of law, because they have already recovered more than the full value of the property from their insurance agency through separately-filed state court claims.  Brief in Support of Motion for Partial Summary Judgment of Countrywide Home Loans, Inc. ("Pl. Br.") at 1-2.  The Ariyos purchased the home in January 2005 for $2 million.  In September 2006,  following a settlement of the Ariyos' state court claims against the Jeff Ivy Insurance Agency, the Ariyos recovered $1.9 million.  Countrywide contends that, because the Ariyos also continue to own the land on which the residence sits, valued at $600,000 by the county tax appraiser, the Ariyos have received a value of $2.5 million for the residence.  Pl. Br. at 2. Countrywide contends that, under Texas case law, a doctrine known as the one satisfaction rule precludes the Ariyos, as a matter of law, from obtaining a second recovery that would exceed their losses.  Pl. Br. at 2-4.  The Ariyos, on the other hand, argue that the one satisfaction rule does not apply to this case.  Defendants' Brief in Support of Response to Countrywide Home Loans, Inc.'s Motion for Partial Summary Judgment on the "One Satisfaction Rule" ("Defs. Br.") at 10-11. The court agrees that the one satisfaction rule does not apply here.

Under Texas law, "a prevailing party is entitled to only 'one satisfaction' for an injury." *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993) (internal citations omitted).  The Texas Supreme Court explains the rule this way:

> [W]hen a plaintiff files suit alleging that multiple tortfeasors are responsible for the plaintiff's injury, any settlements are to be credited against the amount for which the liable parties as a whole are found responsible, but for which only the non-settling defendant remains in court.  The rationale for this doctrine is that the plaintiff should not receive a windfall by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed.

**Memorandum Opinion and Order – Page 4**

The plaintiff would otherwise be recovering an amount greater than the trier of fact
has determined would fully compensate for the injury.

*Id.*  The party seeking the benefit of a settlement credit has the burden of establishing that it is

entitled to such a reduction.  *Id.*  The one satisfaction rule applies when multiple defendants commit

the same act, as well as when defendants commit technically different acts that result in a *single*

injury.  *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000) (emphasis added).  Thus,

whether defendants are sued jointly in one action or separately does not determine whether the one

satisfaction rule should apply; instead, the rule "applies to prevent a plaintiff from obtaining more

than one recovery for the *same* injury."  *See Stewart Title Guaranty Co., v. Sterling*, 822 S.W.2d 1,

7 (Tex. 1991) (emphasis added).

In this case, Countrywide argues that the Ariyos' recovery of $2.5 million ($1.9 million in

settlement and $600,000 in remaining land value) makes them more than whole for any damage to

a property purchased for $2 million, and that they should be denied any additional recovery.  Pl. Br.

at 5-6.  The Ariyos argue that their counterclaim in this case seeks damages for an injury separate

and distinct from the injury that was the subject of their state court lawsuit and settlement.  Defs. Br.

at 11.  Specifically, the Ariyos argue that they seek breach of contract damages in this case, because

Countrywide used the escrow funds to pay the contractor for work that had not been completed at

the time of the fire, while their state court lawsuit and settlement with the insurance company

compensated them for fire damages to the completed portion of the home.  *Id.*  The court agrees that

the Ariyos seek recovery for distinctly different injuries, rather than a single injury.

In each case applying the one satisfaction rule that the court has reviewed, all of the

defendants could be held jointly liable for the single injury suffered by the plaintiff in those cases,

even though the claims brought against the defendants might have varied.  For example, in *Stewart*

**Memorandum Opinion and Order – Page 5**

*Title*, the plaintiff-buyer of a property sued the seller, the seller's counsel and the title company after discovering that the land he purchased did not include three key parcels he needed for development, despite the defendants' assurances that the conveyance included good and indefeasible title to the those parcels. *Stewart Title*, 822 S.W. 2d at 3. The court held that the one satisfaction rule applied, because the misrepresentation of the defendants caused a "single indivisible harm" to the buyer, namely the diminished value of the property purchased without the three parcels. *Id.* at 8. In another case involving the purchase of property, the plaintiffs-buyers sued the sellers and two title insurance companies for failing to disclose a restrictive covenant that prohibited them from using the property for the express purpose for which they bought the land. *Garrett*, 860 S.W.2d at 75-76. The court held that the one satisfaction rule applied, because the buyers suffered one injury, land worth less than it was represented to be worth. *Id.* at 79.

In this case, Countrywide appears to argue that the Ariyos' single injury is the loss of the house from the fire, but that is incorrect. The Ariyos' state court settlement compensated them for damages to the property as a result of the fire.[2] The Ariyos' suit in this case seeks to recover for the diminished value of the home's original $2 million purchase price, because, the Ariyos assert, the final construction that would warrant a release of the escrow funds had not been completed at the time of the fire. *See* Defs. Br. at 4-10. In essence, the Ariyos are arguing that Countrywide, by releasing the escrow funds to the contractor, caused them to pay more for the house than it was

---

[2]Countrywide included the settlement agreement as a part of its summary judgment evidence. The settlement agreement states, generally, that it is based on the claims brought in the Ariyos' state court petition, which neither party has provided to this court. Thus, the court has no direct evidence on the claims asserted by the Ariyos in their state court case against the insurance agency. Based on the parties' briefs, however, there appears to be no disagreement that the settlement was intended to compensate the Ariyos for fire damage to the house, even though the parties disagree as to the effect of an amended settlement agreement allocating portions of the $1.9 million payment toward prejudgment interest and statutory damages.

worth at the time of the fire. This is not the *same* injury for which the Ariyos could have recovered from Countrywide and the insurance agency, jointly. Countrywide was in no way liable for the fire damages that was the subject of the state court lawsuit, nor would the insurance agency be liable to the Ariyos for an overpayment on the house purchase price. By arguing that the Ariyos have been made whole, in part because the underlying land is currently appraised at $600,000, Countrywide has thrown out a red herring. The overall value of the property owned by the Ariyos (the $1.9 million settlement plus the $600,000 land value) is not a factor under the one satisfaction rule. The issue is whether the Ariyos' state court settlement has compensated them for the *same* injury they now claim against Countrywide, and the answer is no.[3]

## IV.  CONCLUSION

For the reasons stated herein, the court determines that genuine issues of material fact exist as to the Ariyos' counterclaims for breach of contract and breach of fiduciary duty; therefore, Countrywide is not entitled to judgment as a matter of law. Accordingly, the court **denies** the Motion for Partial Summary Judgment of Countrywide Home Loans, Inc.

**It is so ordered** this 23rd day of May, 2007.

Sam A. Lindsay
United States District Judge

---

[3]Furthermore, the court would point out that the Ariyos are entitled to an increase in the land value of their property, even if the house sitting on top of the land has been destroyed. As Countrywide's summary judgment evidence shows, the land was appraised at $325,000 in 2004, the year before the Ariyos purchased the property; $425,000 in 2005, the year they purchased the property; and $600,000 in 2006, the year they settled their state court claims. Pl. Br. Appendix at 26. The "windfall" that Countrywide says the Ariyos have received is due, in part, to an increase in land value driven by market forces.